78 F.3d 591
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Charles ANDERSON; Mary Lean Anderson; Leola Beard; and
Caroline Bowen, Plaintiffs-Appellants,
v.
CITY OF PASADENA; Pasadena Police Department; Jerry
Oliver, Chief of Police; and Sherman T. Block,
Sheriff, Los Angeles County Sheriff's
Department, Defendants-Appellees.
 No. 94-56301.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 7, 1996.*
Decided March 12, 1996.
 
 1
 Before: PREGERSON and T.G. NELSON, Circuit Judges, and EZRA,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 This is a civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiffs alleged in United States District Court that Pasadena Police Department (PPD) and Los Angeles County Sheriff's Department (LASD) law enforcement officers executed a multiple-location residential search warrant that resulted in violations of their federal civil rights. The district court first granted the plaintiffs leave to amend their complaint and then dismissed the complaint with prejudice with respect to the Pasadena Police officers and the Sheriff's Deputies. The district court then rejected plaintiffs motions for reconsideration. In the final order, the district court entered summary judgment for defendants City of Pasadena and Los Angeles County. This appeal ensued.
 
 
 4
 We have jurisdiction under 42 U.S.C. § 1291. We affirm.
 
 
 5
 * We review a dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) de novo, Stone v. Travelers Corp., 58 F.3d 434, 436-37 (9th Cir.1995); and we review a district court's decision on qualified immunity in a § 1983 action de novo, Elder v. Holloway, --- U.S. ----, 114 S.Ct. 1019, 1023 (1994); Neely v. Feinstein, 50 F.3d 1502, 1507 (9th Cir.1995).
 
 
 6
 We also review a grant of summary judgment de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994).
 
 II
 
 7
 We address four issues raised by this appeal: (a) Whether the district court improperly dismissed plaintiffs' complaints against the individual PPD and LASD officers based on its assessment of the applicable pleading standards; (b) Whether the district court erred in holding that the search warrant was constitutionally valid and that the City of Pasadena was therefore not liable under Monell v. Department of Social Servs., 436 U.S. 658 (1978); (c) Whether the district court properly granted summary judgment in favor of Los Angeles County with respect to the claim that the LASD had a practice and custom of violating the "knock-notice" requirement, and (d) Whether this case, if remanded, should be assigned to a different United States District Court Judge.
 
 
 8
 * In order to satisfy pleading standards for § 1983 claims against individual government officers, a plaintiff must (1) allege a violation of a "clearly established" constitutional right, Siegert v. Gilley, 500 U.S. 226, 231 (1991), and (2) satisfy the applicable pleading standard. Claims involving the officers' subjective intent requires a heightened pleading standard. Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir.1994).[1] Claims that do not involve the officers' subjective intent follow the regular notice pleading standard.
 
 We have held that
 
 9
 [w]hen a law enforcement officer asserts qualified immunity from liability for Fourth Amendment violations, the district court must determine ... 1) Was the law governing the official's conduct clearly established? 2) Under the law, could a reasonable officer have believed the conduct was lawful?
 
 
 10
 Act Up!/Portland v. Bagley, 988 F.2d 868, 871 (9th Cir.1993). As the Supreme Court clarified in Anderson v. Creighton, 483 U.S. 635, 640 (1987), "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."
 
 
 11
 1. Excessive Force, False Arrest, and Unreasonable Detention
 
 
 12
 On the claims of use of excessive force, false arrest, and unreasonable detention, appellants have not pleaded sufficient facts to determine whether defendants violated clearly established law. Even under a notice pleading standard, plaintiffs have failed to plead enough facts to survive a motion to dismiss.
 
 
 13
 Appellants claim that defendants used excessive force by kicking Larry Lee in the head and kneeing Quincy Talley in the back. But the appellants' amended complaint does not provide any other information. It is impossible to ascertain even a vague picture of what happened in these cases. With respect to Lee, the complaint does not tell us whether Lee was innocently lying on the floor when the officer kicked him or if Lee was on the floor aggressively attempting to bite the officers. Similarly, with respect to Talley, we cannot determine whether Talley was kneed in the back as part of a random act of violence by the officer or was kneed as a response to obstruction of the duly authorized search. Nor are we told who the principal officers at those scenes were. As the district court noted, appellants' amended complaint fails to provide even a modicum of information or precedent that would allow a determination of whether clearly established law proscribed the use of force in these situations. We therefore affirm the dismissal of these two claims.
 
 
 14
 Appellants also claim that Tim Mims was falsely arrested. Yet the amended complaint merely asserts the fact that Tim Mims was arrested during an execution of a search warrant, the amended complaint does not allege any other facts surrounding this arrest. Again, the notice pleading standard requires more facts to determine what clearly established law applied to his arrest and to allow defendants the opportunity to make a defense of qualified immunity. The district court properly dismissed this claim.
 
 
 15
 Appellants also claim that defendant officers unreasonably detained non-suspects during the execution of the search. Appellants concede that officers can detain non-suspects during an execution of a search warrant. Appellants Opening Brief p. 13; See Michigan v. Summers, 452 U.S. 692, 705 (1981), (granting police the authority to detain all occupants of a residence during an execution of a search warrant for contraband). Other than simply stating that the detainees were non-suspects, appellants fail to provide any other facts. Thus, even if we take as true that some detainees were non-suspects, this fact alone is insufficient to support a pleading that defendants' conducts went against clearly established law.
 
 
 16
 In sum, appellants' pleading is defective because it fails to provide even a skeletal basis for a claim that defendants alleged use of excessive force, false arrest, and unreasonable detention were against clearly established law. We therefore affirm the dismissal of these claims under the notice standard and need not reach the question of the applicability of heightened pleading.
 
 2. Interference with Property
 
 17
 When executing a search warrant, "officers ... on occasion must damage property in order to perform their duty." Dalia v. United States, 441 U.S. 238, 258 (1979). If property damage resulting from a search warrant "was caused by the officers' mere negligence, there is no violation." Bergquist v. County of Cochise, 806 F.2d 1364, 1369 (9th Cir.1986).
 
 
 18
 Here, appellants claim that during the execution of the warrant "furniture was forcibly broken, removed from the house, or otherwise dislodged, belongings were scattered, and property was improperly seized." Appellant's Opening Brief at 15. The amended complaint is slightly more specific as to the home at 295 Parke Street. It states that officers forced open trunks with crowbars, threw an antique dresser into the garden and thereby killed several plants, seized an inoperable gun, and took three dogs to the pound where they were later euthanized. First Amended Complaint at 9 (ER 53).
 
 
 19
 Appellants claim that these alleged damages are compensable under § 1983. But the facts as alleged are insufficient to implicate a violation of a clearly established right under Ninth Circuit law. Even on the face of the amended complaint, it is unclear whether the destruction of property was justified by circumstance or was the result of mere negligence. Without more facts or precedent to support a claim, defendants could not be expected to know what clearly established right they had violated.
 
 
 20
 Because appellants' pleading is deficient, we do not reach the question of the applicability of heightened pleading. We therefore affirm the dismissal of this claim.
 
 3. Judicial Deception
 
 21
 Plaintiffs claim that Investigator Delgado made false statements to obtain the search warrant. It is clearly established that judicial deception may not be employed to obtain a warrant. Franks v. Delaware, 438 U.S. 154, 155-56 (1978). A claim of judicial deception requires a heightened pleading standard. A plaintiff must: (1) specifically point out the portion of the warrant affidavit that is claimed to be false, (2) allege facts tending to show that the officer was aware or should have been aware of the falsity of those statements, and (3) allege that those false statements were necessary to the magistrate's finding of probable cause. Franks v. Delaware, 438 U.S. at 155-56; Branch v. Tunnel, 937 F.2d 1382, 1387 (9th Cir.1991).
 
 
 22
 Plaintiffs met the first and third parts of the pleading requirement, but they failed to meet the second requirement. Specifically, they failed to allege any facts that indicate that Investigator Delgado was aware or should have been aware of the falsity of statements he made in the warrant application. Although the district court gave plaintiffs an opportunity to address this oversight, plaintiffs' amended complaint still failed to meet the second pleading requirement of intent. This shortcoming makes this pleading defective under Franks and we therefore affirm its dismissal.
 
 4. Chief Oliver & Sheriff Block
 
 23
 The claims against Chief Oliver and Sheriff Block rest on Monell liability. We therefore address these claims in parts B and C below.
 
 B
 
 24
 Appellants argue that the search warrant was constitutionally invalid and that the execution of the warrant conferred § 1983 liability on the City of Pasadena under Monell v. Department of Social Services, 436 U.S. 658 (1978). We first review the search warrant and then turn to the issues of municipal liability.
 
 1. Search Warrant
 
 25
 Section 1983 liability may arise with the issuance of a search warrant when the conduct of state officials falls short of "objective reasonableness." Malley v. Briggs, 475 U.S. 335 (1986) (citing Harlow v. Fitzgerald, 457 U.S. 800 (1982). In general, appellants argue that Investigator Delgado's search warrant application "lacked indicia of probable cause, and was an overbroad, unparticularized 'general warrant.' " Appellants' Opening Brief at 18.
 
 
 26
 As appellants note, we must conduct a "totality-of-the-circumstances analysis" when evaluating probable cause affidavits, and our test is whether there is a "practical, commonsense decision ... [and whether] there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).
 
 
 27
 Here, Investigator Delgado's warrant application is impressively detailed and specific. The application carefully explained the five violent crimes and linked them to twelve members of the P9 gang of Pasadena. ER at 88-91. The application thus focused on twelve individuals implicated in criminal activity and requested a warrant to search the homes, vehicles, and persons of these twelve individuals. ER at 79-82.
 
 
 28
 We are unconvinced that Investigator Delgado misled the municipal court judge by supplying false information in the warrant application. As we noted above in part A, there were no facts pleaded nor was it alleged that Delgado intentionally misled the municipal judge. Nor do we believe that an objective standard requires a finding of lack of probable cause. The warrant application detailed enough information supporting probable cause with respect to each individual suspect. Although Investigator Delgado did rely on informants, the allegations of these individuals, even if unreliable alone, were corroborated by anonymous callers and "word on the street." The gang-related nature of the five crimes and eye witness testimony that identified a P9 gang member as an assailant further supported a finding of probable cause.
 
 
 29
 We also reject plaintiffs attacks on the warrant's authorization to search for evidence of street gang membership. The crimes to which the P9's were linked were thought to be gang-related. As such, evidence of participation in the gang, coupled with other evidence linking the P9's to the crimes would be relevant if found. Again, the warrant targeted twelve members of the P9. Given these circumstances, we do not believe that the warrant was unconstitutionally "general." It did not authorize an unbridled police search of a neighborhood or block. It did not even authorize the search of the entire P9 gang or a search of gang members in general.
 
 
 30
 We conclude that the totality of the circumstances as alleged in the affidavit and addenda supports the existence of probable cause and the search warrant's validity. At the time the warrant was issued, there was a fair probability that evidence of these gang-related crimes would be found at the twelve locations searched.
 
 2. Municipal Liability
 
 31
 Appellants claim that the City of Pasadena should be held liable for the tortious acts of its agents, including the police commander that ordered the search warrant. A plaintiff may sue a municipality under § 1983 if the municipality's policy or custom has resulted in the deprivation of his constitutional right. Monell v. Department of Social Servs., 436 U.S. 658 (1978).
 
 
 32
 With respect to a municipality's liability for its policies, the Supreme Court has explained that:
 
 
 33
 [M]unicipal liability under § 1983 attaches where--and only where--a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.
 
 
 34
 Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) (emphasis added). Specifically, the municipal policy must be deliberately promulgated by an official with final authority over the subject matter in question. St. Louis v. Proprotnik, 485 U.S. 112 (1988).
 
 
 35
 Appellants argue that the PPD police commander, who authorized the execution of the search warrant, was an official with final policy making authority. The district court pointed out, however, that the official with final policy making authority with respect to search warrants is Pasadena's Chief of Police. Order Granting Plaintiffs' Motions for Summary Judgment, at 4 (ER 20). The district court's conclusion was correct. With respect to a local police department, California law clearly establishes that a municipality's Chief of Police bears final authority with respect to actions of the police department. California Government Code § 38630 (West 1968); Collins v. City of San Diego, 841 F.2d 337, 341 (9th Cir.1988).
 
 
 36
 Here, the order to execute the warrant was given by a PPD police commander not PPD Chief Oliver. There is no allegation that Chief Oliver knew or acquiesced to the execution of the warrant. In fact, Chief Oliver testified that he was never personally involved in the obtaining or execution of the search warrant. Declaration of Jerry Oliver in Support of Motion for Summary Judgment, June 29, 1994, at 1-2 (Supp. ER 2).
 
 
 37
 On the facts before us, we conclude that the authorization of the PPD police commander is, without more, insufficient to establish the existence of a PPD policy under § 1983. We also must conclude that the Pasadena Chief of Police is not liable for the same reasons.
 
 
 38
 Nevertheless, the City of Pasadena may be held liable under Monell if we find that there was a municipal "custom" of conducting this type of search. Thompson v. City of Los Angeles, 885 F.2d 1439 (9th Cir.1989). Liability results "[o]nly if a plaintiff shows that his injury resulted from a 'permanent and well-settled' practice ... from a local government custom." Id. at 1444.
 
 
 39
 A custom, however, can be inferred from one incident or related incidents occurring on one day. McRorie v. Shimoda, 795 F.2d 780 (9th Cir.1986). We held in McRorie that a custom can, in extraordinary circumstances, be inferred when a "disposition to disregard human life and safety" is so prevalent that ignoring such a disposition can be assumed to be policy or custom. Id. at 784. In McRorie, prison inmates were subjected to a brutal search and one inmate claimed that a prison guard attempted to penetrate his anus with a billy club. This search resulted in injuring twenty-nine inmates--some of whom required medical attention. The fact that the prison authorities did not react at all to this incident evidenced the customary nature of such activity.
 
 
 40
 But on the facts before us we do not see the disregard of human life and safety that we were concerned with in McRorie. Here, the PPD and LASD executed a multiple-location search warrant as part of a criminal investigation of five violent incidents allegedly involving the P9 gang. The individuals searched were P9 members linked to the incidents and thought to be in possession of firearms and other weapons.
 
 
 41
 Appellants also urge us to consider that the allegedly destructive manner in which this search was executed and the City of Pasadena's failure to reprimand specific officers evidences the disregard for human life and safety that constitutes a custom under McRorie. We are not convinced that the City of Pasadena's decision to take no disciplinary action is evidence of the city's approval of unconstitutional acts. As we noted above, appellants provided only scant facts insufficient to support a claim of the excessive force and destruction complained of. Moreover, appellants fail to show evidence that points to the specific officers responsible for the alleged harm. Without more facts to guide it, the City of Pasadena was understandably cautious in issuing reprimands. We agree with the district court that the facts in this case do not show a custom of deprivation of constitutional rights sufficient to attach § 1983 liability to the City of Pasadena.
 
 C
 
 42
 As for the Monell claim against the LASD, we conclude that the district court was correct in dismissing the claim. For Monell liability to attach, plaintiffs must show that the alleged custom does not consist of random acts or isolated events. Thompson v. City of Los Angeles, 885 F.2d 1439, 1444 (9th Cir.1989). The district court found that only a few executions of over 1,000 searches conducted by the LASD each year resulted in violations of the "knock-notice" requirement. Without more evidence of a LASD custom of violating the "knock-notice" requirement, we are unwilling to infer a custom that would result in holding LASD and Los Angeles County liable under § 1983.
 
 D
 
 43
 Because there is no need to remand to the district court, we do not reach the issue relating to the reassignment of this case to a different district judge. We note, however, that even if we were to remand, we see no evidence of bias against plaintiffs here that would merit reassignment.
 
 III
 
 44
 For the reasons stated above, we affirm the district court's orders dismissing the appellants' claims against the individual PPD and LASD officers, the City of Pasadena, and the County of Los Angeles.
 
 
 45
 AFFIRMED.
 
 
 
 *
 The panel unanimously found this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Cir.R. 34-4
 
 
 **
 The Honorable David Alan Ezra, United States District Judge for the District of Hawaii, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This heightened pleading standard is not applicable to suits against municipalities. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, --- U.S. ----, 133 S.Ct. 1160, 1161-62 (1993)